## McGoodwin Banking Company's Assignee, et al. v. Gooch, et al.

(Decided February 1, 1912.)

### Appeal from Simpson Circuit Court.

1. Trial—Equitable Action—Submission—Section 364, Civil Code.—An equitable action is properly submitted for trial, when the pleadings were completed more than four months before the term.

2. Same—Continuance.—In an equitable action, affidavit for continuance and counter affidavits examined, and held that the trial court did not abuse its discretion in refusing to grant a continuance.

3. Judgment—Pleading—Proof.—Where the allegations of the petition are denied, and plaintiffs introduce no proof to sustain them, judgment for the defendants is proper.

GEORGE W. WHITESIDES for appellant.

ROARK & FINN and L. B. FINN for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The Kentucky-Beaumont Oil Company was incorporated under the laws of Arizona with power to acquire, lease and operate oil wells, etc. It began operations in

the State of Texas, but the undertaking was a failure, and the company soon became insolvent. J. J. Milliken, as assignee of the J. A. McGoodwin Banking Company; R. L. Cox & Co., The Southern Car Manufacturing and Supply Company, and J. Wm. Pole, claiming to be creditors of the Kentucky-Beaumont Oil Company in various sums, and that the company had no assets with which to meet their claims, brought this action against W. J. Gooch, G. W. Roark, G. T. Finn, L. B. Finn and J. O. Leake to recover of them the amount of their unpaid subscriptions to the capital stock of the company, and to subject same to the payment of the corporate debts. After setting forth the incorporation of the company, the laws of Arizona, the facts showing how their various claims arose, and the fact that defendants were the incorporators and directors of the company, the petition contains the following allegations concerning the stock subscriptions:

"Plaintiffs aver that in the organization and incorporation of the said Kentucky-Beaumont Oil Company, as aforesaid, the defendant, W. J. Gooch, subscribed for and became, and is, the owner of 2-18 of the $500,-000.00 capital stock of said corporation; that his said 2-18 of said capital stock was and is of the par value of $55,400, for which he paid the sum of one thousand dollars and no more. That in the organization and incorporation of said Kentucky-Beaumont Oil Company, as before herein set out, each of the defendants, G. W. Roark, G. T. Finn, L. B. Finn and J. O. Leake subscribed for and each became and is the owner of 1-18 of the $500,000 capital stock in said corporation; that each of said defendants, G. W. Roark, G. T. Finn, L. B. Finn and J. O. Leake, interest in said capital stock was and is of the par value of $27,500, for which neither of said defendants paid for their said stock exceeding $500 and no more."

The defendants in their answer made the following denial:

"The defendants, W. J. Gooch, G. W. Roark, G. T. Finn, L. B. Finn and J. O. Leake, for their joint and separate answer to so much of the petition and amended petition of the plaintiffs, as they are advised it is material for them to answer, deny that W. J. Gooch subscribed for or become or is the owner of 2-18 of the $500,000 of the capital stock of said corporation at the par value of $55,400, or any other amount of capital

stock of said corporation over and above $1,000.00. They deny that each or any of the defendants, G. W. Roark, G. T. Finn, L. B. Finn or J. O. Leake, subscribed for, or became, or are the owners of 1-18 of the $500,000.00 capital stock in said corporation at the par value of $27,700 or for any other sum over and above $500 each.''

The answer of the defendants also contains the following allegation:

''These defendants state that W. J. Gooch subscribed to the capital stock of said corporation $1,000, and each of the other defendants subscribed to same $500, and all these defendants paid in cash the amounts they respectively subscribed, and they further state that as a matter of fact no part of the authorized capital stock was ever in fact issued to any of these defendants.''

Over the protest of counsel for plaintiffs, the case was submitted, and judgment rendered in favor of the defendants. Plaintiffs appeal.

As the allegations of the petition with respect to the amount of stock subscribed and not paid for by the defendants were denied, and no proof was taken tending to show that any one of them subscribed for more stock than he paid for, it follows that the judgment was proper, provided the court did not err in refusing to grant plaintiffs a continuance which they asked for, and earnestly contend should have been granted. The record discloses that the petition was filed on June 1, 1909, just prior to the June term of the Simpson Circuit Court. W. J. Gooch, one of the defendants, was not served with process until after that term. The next term of the court began on the first Monday in November, 1909. Upon October 22, 1909, plaintiffs filed an amended petition. At the November term, 1909, the defendants were given until the first day of January to file an answer. On December 23, 1909, their answer was filed. On February 7, 1910, plaintiffs filed a reply. On March 19, 1910, defendants filed an amended answer. On April 13, 1910, plaintiffs filed a reply to the amended answer. On April 29, 1910, they filed an amended reply to the amended answer. On June 27, 1910, plaintiffs filed amended reply No. 2 to the defendants' answer and amended answer. Thus it will be seen that the last pleading filed by defendants was filed March 19, 1910. Thereafter plaintiffs took three months to complete their replies. The next term of the court occurred in November, 1910. Whether the case stood for trial at

the June term or not, it certainly stood for trial at the November term, 1910, (Civil Code, Section 364) for the pleadings not only should have been completed but were actually completed more than sixty days before the commencement of that term.  But plaintiffs claim that they were entitled to a continuance on the showing made by the affidavit of their attorney, which was filed when defendants moved for submission.  In this affidavit, plaintiffs' attorney states that with the exception of one of the plaintiffs, plaintiffs are all absent from the State; that the depositions plaintiffs desire to take as evidence are those of persons living at a great distance from the county, some of them residing in the State of Texas, and who had not been in this State since the suit was filed; that he is not advised as to their testimony or fully of the statements they will make; "That just after the last term of this court, as attorney for the plaintiffs, he went to G. T. Finn, one of the defendants, and attorney for his co-defendants, for the purpose of arranging for taking the depositions in this case; that he was then told by said Finn that the pleadings were not made up; that he desired and would file another pleading, and not to take depositions until the pleadings were all in; that he relied upon the statement of said Finn, notified the plaintiff, J. J. Milliken of said statements, and for this reason, plaintiffs took no steps to take depositions of the witnesses living in Texas. That Mr. Finn has not filed as yet his said pleading. That he really believes he can make material evidence by the said witnesses if allowed until the next term of court.  That he does not make this application for continuance for delay merely but that justice may be done."

Counter affidavits were filed by G. T. Finn and Clarence Evans.  Finn's affidavit is as follows:

"The affiant, G. T. Finn, states, that it is not a fact that he requested G. W. Whitesides not to take depositions in the above case until the pleadings were all in. He states that shortly after the last June term of the Simpson Circuit Court, G. W. Whitesides came to him and asked him when it would suit him to go to Texas and Arizona to take depositions in the above styled case. He states that he then and there told G. W. Whitesides that he did not propose to go to Texas or Arizona to take depositions; that he would require depositions to be taken upon interrogatories; that Whitesides then asked him if he would require notice of the filing of his

interrogatories in the Circuit Clerk's office. The affiant told Whitesides that he would not require notice, and that when he filed his interrogatories, the defendants would file their cross-interrogatories. He states that he at no time made any request of Whitesides not to take any depositions in this case until the pleadings were made up. Upon one occasion he did state to Whitesides that he might possibly want to file an amended pleading, but that if he did, this amendment would place no new issue, but would merely be to perfect a paragraph and defense already made, if upon investigation, this affiant should deem said defense and paragraph imperfectly pleaded. He further states that upon August 29, 1910, G. W. Whitesides, as attorney for plaintiffs, took the deposition of one W. J. Pole, to be read as evidence in behalf of plaintiffs in this case, at his law office in Franklin, Kentucky; that Clarence Evans was the examiner who took said depositions; that Whitesides again asked this affiant to go to Texas and Arizona to take depositions in this case. This affiant replied to Whitesides in the presence of Evans and stated that he did not want any misunderstanding about this; that he theretofore told him, Whitesides, that he was not going to Texas and Arizona, and had told him to file his interrogatories; and that this affiant would file cross-interrogatories without notice; and Whitesides replied, "Yes, I recollect on a former occasion you told me this." This affiant then repeated to Whitesides that any time he would file interrogatories, the defendants would file cross-interrogatories; and this was the last conversation that has occurred between Whitesides and this affiant with reference to this suit, which conversation occurred upon the 29th day of August, 1910, or near that time."

Clarence Evans' affidavit is as follows:

"This affiant, Clarence Evans, states that he was present in G. W. Whitesides' office and he heard Whitesides ask Finn when it would suit him to go to Arizona or Texas, or some place out West, to take depositions in the above case; that Finn told him that he was not going out West to take any depositions; and that he, Finn, had previously told Whitesides that he was not going; that for Whitesides to file or prepare his interrogatories and that he would prepare and file his cross-interrogatories without notice. Said conversation took place some six or seven weeks ago."

It is insisted by counsel for plaintiffs that as Finn admitted that he might want to file an amended pleading, plaintiffs had the right to rely on such statement and to expect that the pleading would be filed, and until filed they could not determine whether or not any new issues were raised, and that therefore they have shown good reason for not taking proof. In the first place, the statements made by the two attorneys are directly opposed. In the next place, the conversation which Finn and Evans say took place on August 29, 1910, is not denied by counsel for plaintiffs. And even if we concede that counsel for plaintiffs was unintentionally misled by the statement of Mr. Finn, and that he had the right to delay taking his proof because of the possibility that defendants might file an additional pleading which might present a new issue, yet counsel for plaintiffs received notice on August 29, 1910, that counsel for defendants was not going to Arizona or Texas to take depositions, but demanded the taking of the depositions or interrogatories which he agreed to cross without notice. After that time counsel for plaintiffs had two months within which to take his depositions. Furthermore, counsel for plaintiffs admits in his affidavit that he was not informed as to the means of his witnesses or fully what they would testify to. He asks for a continuance because "he really believes he can make material evidence by the said witnesses, if allowed until next term of court." It is not the policy of the law to continue a case that has been on the docket for a year and a half and stands for trial, to give counsel an opportunity to hunt for witnesses whose names he does not know in the hope that when found they may testify to facts that may prove material. (Higgins v. Gose, et al., 144 Ky., 123.) The rule is not to interfere with the discretion of the trial court in the matter of granting or refusing a continuance, unless it be made to appear that there has been an abuse of discretion. In the present case we are unable to say that the trial court abused its discretion in refusing the continuance asked for by plaintiffs.

Judgment affirmed.